## PATRICK LUCIA *v.* STATE OF VERMONT.

January Term, 1905.

Present: ROWELL, C. J., TYLER, MUNSON, WATSON, HASELTON, and
POWERS, JJ.

Opinion filed February 20, 1905.

*Rape—Petition for New Trial.*

On a petition for a new trial on a charge of rape it appeared that
on the trial the prosecutrix, fourteen years of age, testified that
the respondent had sexual intercourse with her against her will;
that he was convicted of an assault with intent to rape; that
about a year after the trial prosecutrix, while in jail for some
immoral conduct, made affidavit that her testimony on the trial
was "largely false," and that she was compelled by her father to
testify as she did. The counter affidavits showed that the prose-
cutrix's depravity developed after the trial; that she had stated
after the trial that her testimony on the trial was true, and that
"what she had later said about her father having compelled her to
testify was not true." *Held*, that the respondent was not entitled
to a new trial.

PETITION for a new trial, brought under V. S. 1662, to
the Supreme Court for Chittenden County at its January
Term, 1905, and then heard on testimony taken and filed.
The opinion states the facts.

*Martin S. Vilas* and *R. E. Brown* for the petitioner.

*Alfred L. Sherman,* State's Attorney, for the State.

It is a presumption of law that the testimony of the pros-
ecutrix given on the trial is true, and that her subsequent con-
tradictory statements made out of court are false. *People* v.
*McGuire,* 2 Hun. 269; *Holtz* v. *Schmitz,* 44 N. Y. Supp. Ct.
327; *Lasseter* v. *Simpson,* 78 Ga. 61; *Lake* v. *Hardee,* 55 Ga.
667; *Simms* v. *Simms,* 12 Hun. 231; 14 Ency. Pl. & Pr. 811.

HASELTON, J.   At the March Term, 1903, of the Chittenden County Court the petitioner was tried upon a charge of rape upon Catherine Myers, a girl of about the age of fourteen years.   The said Catherine testified on trial that on the occasion to which the charge related the petitioner had actual sexual intercourse with her forcibly and against her will.   The State introduced evidence of a circumstantial nature tending to corroborate the testimony of the said Catherine. The respondent introduced evidence tending to discredit her testimony.   The jury found the respondent guilty, not of rape, but of an assault with intent to commit rape.   On the evidence as it stood, they might well have reached the conclusion which their verdict announced.   Judgment was rendered on the verdict, and the petitioner was sentenced to confinement in the State Prison for not less than three years, nor more than three years and a half.   His imprisonment under the sentence began April 10, 1903, and has since continued.

The petition sets out that a new trial is asked on the ground of newly discovered evidence.   More precisely the claim is that the girl has retracted her testimony, a claim of the discovery of the fact that on a new trial the State would be without material evidence which it had on the trial at the March Term, 1903.

The petition for a new trial is accompanied by affidavits taken both on the part of the respondent and of the State. There is no affidavit tending to show that for about a year after the trial of Lucia the girl said or intimated to any one that she had given any false testimony.   Nearly all of the affidavits tend to show that about a year after the trial, when she had come to be nearly sixteen years of age, she was an inmate of the Chittenden County jail and was immoral and depraved.   Of the persons who gave affidavits in behalf of the petitioner, one deposes that she was in jail "on some kind of

an immorality charge," another that she was awaiting trial on a charge of "immoral conduct," another that "she seemed to be entirely destitute of morality," and that he was "particularly struck with her depravity," that "she acted and talked like a depraved woman of twenty-five." The petitioner produces an affidavit tending to show that from April 11, 1904, to August 8, 1904, she was once convicted on a charge of open and gross lewdness, and once on a charge of prostitution. Affidavits for the petitioner tend to show that after and not far from April 11, 1904, she talked in jail about the Lucia case in which she had testified as the complaining witness a year before. The affidavits on the part of the petitioner as to colloquial statements that she made vary to a great degree. One affiant deposes that she said that her testimony in the Lucia case "was mostly a lie," another that she said that "a considerable part" of it was not true, another that she stated "that her father put her up to tell the story against Lucia," another that she said, in effect, that "Lucia was innocent of the charge," and still another, that she said "Lucia is all right, he never touched me." No attempt is here made to cull out of the affidavits all the expressions which she is claimed to have used relative to her testimony in the case against Lucia, since her own affidavit taken while she was in jail is produced and will shortly be referred to.

The affiants for the petitioner, for the most part make oath to the effect that she said she was an unwilling witness against Lucia, that she was sorry for him, and wanted to get him out of prison, and that her father controlled her in the matter of her testimony and was to blame.

John Wilson Ketchum, an inmate of the jail while the girl Catherine was there, deposes that he told her "that she might make a statement that might straighten the matter out," and that at her request he sent for Lucia's attorney who

came and asked her what she wanted to say, and after talking with her drew up her statement which she read and signed. Her sworn statement subscribed and sworn to before the petitioner's attorney is this:

"I, Catherine Myers of Burlington, in said County, being duly sworn, on oath depose and state and I am not quite sixteen years old; that I was the complainant in the case of *State* v. *Patrick Lucia,* where the charge was rape; that I was carefully trained for the witness stand by my father, Alexander Myers, who hated Patrick Lucia and wanted to see him convicted; that my testimony was given unwillingly, but I was compelled to testify by my father, and that the testimony offered in the case by me was largely false. The above case was tried one year ago at the March Term of the Chittenden County Court, and resulted in the conviction of Patrick Lucia who is now serving his sentence at the State Prison at Windsor." This carefully drawn affidavit may fairly be taken to indicate the nature and extent of her retraction. She goes no farther than to say that her testimony was "largely false." But she had testified to an actual completed rape, whereas the jury had found Lucia guilty of an assault with intent to commit rape.

If every word of this affidavit be taken as the truth, still Lucia may have done such acts and things as to make him guilty of an assault with the intent to commit rape upon a girl under the age of consent.

But, if we assume that she meant to make affidavit that her testimony was false in every material respect, should a new trial be granted? The affidavits show beyond any fair doubt that Catherine's mother died when Catherine was about ten years old; that shortly after the death her father placed her in an orphan asylum at Burlington, where he kept her and paid her board, and where she had the nurture and training of

such institution, until a few months before the time when,. according to the finding of the jury, the petitioner made upon her an assault with intent to rape, and when, according to the· testimony of the girl as given in open court, he actually had intercourse with her.    It satisfactorily appears from the affidavits that her depravity developed after this occasion, and after the time when she gave her evidence in court.    Her father deposes to this effect, and to the effect that he in no· way influenced her to swerve from the truth in her testimony at the trial.    He further deposes, in substance, that about a year after the trial, he found himself unable to restrain her from following a wanton and vicious life, and that he caused her arrest, in an effort to save her.    Andrew Liberty deposes,. in behalf of the State, that he is a policeman and an uncle of Catherine, and that in April, 1904, he arrested her on a charge of prostitution preferred by her father.    He further deposes that he told her that her father had caused her arrest, and that he told her that, if she had behaved herself, she would not have been in trouble, and that her reply was "my father thinks he is smart, but I will get even with him."    William. Collins deposes that he is a cousin of Catherine, and that,. upon returning to Burlington after an absence of two years,. he learned that she had been in jail on a charge of prostitution, and that he then saw her and, in substance, asked her why she had been in jail, and why she did not do better.   According to his affidavit, she replied to the effect that Lucia had ruined her, and that she had got into the path she was follow-- ing by reason of what Lucia had done.    The affidavit of Collins places this conversation considerably later than the date of Catherine's affidavit of "retraction."    Another affiant for the State, William G. Collins, deposes that he is on the regular police force of Burlington, that on the 16th of January,. 1905, which was only about a week before the meeting of this.

term of Court, he saw Catherine at the House of Correction at Rutland, and asked her about her testimony in the Lucia case and the affidavit which he understood she had made while in jail at Burlington. This officer further deposes in these words: "She would not admit having made the affidavit, and declared emphatically that what she swore to in the trial of the case against Lucia was the truth, and that what she had later said about her father having compelled her to testify was not true."

After the taking of this affidavit the petitioner took affidavits relating to what the girl had said while in jail at Burlington, and to a state of unfriendliness between the father of Catherine and the petitioner, but took no further affidavit from Catherine herself.

We have no hesitation or doubt as to what the action of this Court should be. The affidavit and the statements which she made in the jail at Burlington while mingling with the other inmates thereof were, clearly enough, not the result of a quickened love of truth, but rather of the hardened conscience and character of a girl who, at a susceptible age, had made a swift descent to depravity.

We have examined the girl's retraction, such as it is, in the light of her character, surroundings, impulses and passions at the time it was made, and, in connection with it, have reviewed the evidence at the trial as outlined in a statement furnished by the respondent's counsel, and have carefully examined all the affidavits accompanying the petition for a new trial, whether such affidavits are herein referred to or not, and, without invoking any presumption of law, or determining whether or not there is a presumption of law which could be invoked, we are fully satisfied that the petitioner was justly convicted of an assault with intent to commit rape.

*The petition for a new trial is, therefore, dismissed.*